**IT IS ORDERED as set forth below:**

**Date: April 15, 2022**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 09-78161-JWC |
| KENNETH FREMONT BURRIS and ELAINE LUCILLE BURRIS, | CHAPTER 7 |
| Debtors. | |

**ORDER DENYING THE UNITED STATES TRUSTEE'S
MOTION TO REOPEN CASE**

Ken Burris was diagnosed with non-Hodgkin lymphoma (NHL) years before he and his wife filed bankruptcy in 2009. Because there was no known cause of his cancer when he filed bankruptcy, he and his wife did not schedule any interest in claims related to the cancer. Over three years after the bankruptcy estate was fully administered and the case closed, an agency of the World Health Organization published the results of a study linking glyphosate, a common herbicide, with NHL. According to the uncontroverted evidence before the Court, the 2015

1

publication was the first authoritative statement to label glyphosate as "probably carcinogenic to humans," and precipitated thousands of claims against Monsanto, the maker of glyphosate, by individuals who developed NHL after using the herbicide.  Mr. Burris, who used glyphosate for many years prior to his cancer diagnosis, first learned of the link between glyphosate and NHL in 2019 and soon retained counsel to assert claims against Monsanto.  He has been offered a settlement for his claims (the "Settlement Funds"), and the U.S. Trustee seeks to reopen his bankruptcy case, asserting the Settlement Funds may be property of the bankruptcy estate because Mr. Burris's cancer pre-dated his bankruptcy petition.  The Burrises oppose reopening the case, asserting the Settlement Funds are not property of the bankruptcy estate because the claims against Monsanto did not accrue until, at the earliest, the 2015 study linking glyphosate with NHL.  For the reasons set forth below, the Court concludes the U.S. Trustee failed to carry her burden to establish cause for reopening the bankruptcy case.  The record before the Court does not support a finding that a cause of action accrued as of the commencement of the bankruptcy or that the Settlement Funds are property of the bankruptcy estate.

I.    **Procedural Posture**

Before the Court is a motion to reopen the above-captioned bankruptcy case filed by the U.S. Trustee (Doc. No. 33) (the "Motion").  The Motion requests appointment of a chapter 7 trustee to administer the Settlement Funds for the benefit of the bankruptcy estate.  The Burrises oppose the Motion.  After a hearing, the Court requested additional briefing from the parties and gave an opportunity to both parties to submit evidence or challenge any evidence submitted.  Both the U.S. Trustee and the Burrises filed supplemental briefs, but only the Burrises offered any evidence in the form of two affidavits: one from Mr. Burris and one from Jeffrey A. Travers, counsel for the Burrises in the litigation against Monsanto.  The U.S. Trustee has not challenged

2

either affidavit or any facts contained therein, and the Court considers them undisputed for purposes of the Motion.

## II.  Factual Background

Mr. Burris used glyphosate as an herbicide for many years prior to being diagnosed with NHL in 1997.  In the years since his diagnosis, Mr. Burris has endured numerous surgeries, removal of a lung, decreased kidney function, a bone marrow transplant, and months-long hospital stays.  He was ruled medically disabled in 2005 and continues to be monitored for NHL and related effects.  When the Burrises filed bankruptcy in 2009, neither Mr. Burris nor his physicians had identified a cause of his cancer, and the Burrises did not schedule any interest in claims related to the cancer.  The Burrises received a chapter 7 discharge at the end of 2009.  The chapter 7 trustee issued a report of no distribution a year later, and the bankruptcy case was closed in the Fall of 2011.

In 2015, the World Health Organization's International Agency for Research on Cancer published the results of a year-long study that concluded there is an association between glyphosate-based herbicides and NHL (the "WHO Report").  The WHO Report was the first authoritative statement that glyphosate is "probably carcinogenic to humans."[1]  Conversely, the U.S. EPA still considers glyphosate "not likely to be carcinogenic to humans."[2]  Mr. Burris did not learn of the association between glyphosate and NHL until 2019, at which point he retained the Miller Firm, LLC to represent him in a class action lawsuit against Monsanto, the manufacturer of glyphosate-based herbicides used by Mr. Burris.

---

[1] Travers Affidavit ¶ 3 (Doc. No. 39).

[2] *Id.*

3

Mr. Travers of the Miller Firm is aware of only three cases filed against Monsanto prior to the WHO Report that alleged a connection between glyphosate and NHL, but those cases named pesticide manufacturers as defendants and alleged a combination of pesticides caused NHL.[3] Mr. Travers is aware of no cases prior to the WHO Report alleging that glyphosate-based formulations alone caused NHL. Since the WHO Report, however, an estimated 125,000 claims have been filed against Monsanto, and the Miller Firm represents approximately 5,000 plaintiffs in multi-district litigation against Monsanto. While denying liability, Monsanto has offered to pay the Settlement Funds based on Mr. Burris's diagnosis and the severity of his injuries.

### III. Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(a) and (b). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### IV. Legal Analysis

#### A. Reopening a Bankruptcy Case

Section 350(b)[4] provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350. "[T]he bankruptcy court retains broad discretion to reopen a closed case on a motion of the debtor or another party in interest." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1186–87 (11th Cir. 2017). In exercising its discretion, the court must balance the policy of a fresh start afforded to the debtor against the rights of affected creditors. *In re Tarkington*, 301 B.R. 502, 506 (Bankr. E.D. Tenn. 2003) (*quoting In re Frasier*, 294 B.R. 362, 366 (Bankr. D. Colo. 2003)). "Although a motion to reopen is addressed to the sound discretion of the bankruptcy court, the

---

[3] Although glyphosate is an herbicide, the Travers Affidavit uses the word "pesticide."

[4] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise specified.

4

court in fact has a duty to reopen the estate whenever there is proof that it has not been fully administered." *In re Upshur*, 317 B.R. 446, 451 (Bankr. N.D. Ga. 2004).

The movant carries the burden of establishing that the bankruptcy case should be reopened. *In re Environmental Wood Products, Inc.*, 609 B.R. 901, 912 (Bankr. S.D. Ga. 2019). "As the time between closing of the estate and its reopening increases, so must also the cause for reopening increase in weight." *Id.* at 913 (quoting *In re Geo Specialty Chem. Ltd.*, 577 B.R. 142, 179 (Bankr. D.N.J. 2017)). "A bankruptcy case should not be reopened where it would be a futile exercise or a waste of judicial resources. . . . If a movant could not obtain the substantive relief it intends to seek upon reopening a case, 'then there is no reason to grant a motion to reopen.'" *In re One2One Commc'ns, LLC*, 627 B.R. 273, 284 (Bankr. D.N.J. 2021) (citations omitted).

The only reason to reopen this case is to allow a chapter 7 trustee to administer the Settlement Funds, but if they are not property of the estate, then reopening the case is futile because there is nothing to administer. The real question before the Court is whether the Settlement Funds are property of the bankruptcy estate. As the movant seeking to reopen a case over a decade after it was closed, the U.S. Trustee bears the burden of establishing that the Settlement Funds are property of the bankruptcy estate and that the case should be reopened.

B.  <u>Are the Settlement Funds Property of the Estate?</u>

Section 541(a) of the Bankruptcy Code defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "It is well-settled that causes of action which have accrued prior to bankruptcy become part of the bankruptcy." *In Re Alvarez*, 224 F.3d 1273, 1278 n.12 (11th Cir. 2000) (citing *Venn v. St. Paul Fire and Marine Ins. Co.,* 99 F.3d 1058, 1064 n.10 (11th Cir.1996) and *Miller v. Shallowford Community Hosp., Inc.,* 767 F.2d 1556, 1559 (11th Cir.1985)). "The question of

5

whether a debtor's interest in property is property of the estate is a federal question, but the definition of property and issues about the nature and existence of the debtor's interest, are issues of state law." *Bracewell v. Kelly (In Re Bracewell)*, 454 F.3d 1234, 1243 (11th Cir. 2006). "[W]e look to state law to determine when a claim arises, and if it arises on or before the commencement of the bankruptcy case, it is part of the bankruptcy estate." *Id.* at 1242. "[U]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Witko v. Menotte (In re Witko),* 374 F.3d 1040, 1043 (11th Cir.2004) (citing *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).

The U.S. Trustee argues the Settlement Funds are property of the estate under § 541(a)(1) because Mr. Burris's claims against Monsanto accrued under Georgia law at the time of his injury—i.e., his cancer diagnosis in 1997. The Burrises argue the claims did not accrue under Georgia law until the 2015 WHO Report because the element of causation could not be established prior to the WHO Report. The Court agrees with the Burrises. Under Georgia law, "(T)he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." *Amu v. Barnes*, 283 Ga. 549, 551, 662 S.E.2d 113, 116 (2008) (quoting *Allrid v. Emory Univ.,* 249 Ga. 35, 36, 285 S.E.2d 521 (1982)). The only evidence before the Court demonstrates that Mr. Burris could not have maintained a successful claim against Monsanto prior to the WHO Report, because no one, not just Mr. Burris, could have established a causal link between glyphosate and NHL.

The U.S. Trustee offers no evidence or argument to contradict this conclusion. Instead, she asserts the cancer diagnosis in 1997, in and of itself, meets the test for accrual and relies on cases finding that Georgia's "discovery of harm" statute does not control the question of when a

6

claim accrues under § 541(a)(1). In particular, the U.S. Trustee relies on *In re Davis*, Case No. 10–24836–JRS, 2018 WL 2223076 (Bankr. N.D. Ga. May 15, 2018) and *In re Webb*, 484 B.R. 501 (Bankr. M.D. Ga. 2012). Those decisions, in turn, rely heavily on *In Re Alvarez* and its conclusion that Florida's "discovery rule," as it relates to the statute of limitations for professional negligence claims, is not relevant to the question of whether a claim accrues for purposes of bankruptcy. 224 F.3d 1273, 1278 n.7. While the Court does not disagree with the conclusions in *Davis* and *Webb* based on the facts apparent on the face of those opinions, the facts of this case are different. Unlike in *Davis* and *Webb*, the issue here is not Mr. Burris's individual knowledge of causation.[5] The issue is that no one in the medical, scientific, or legal communities had established a causal link between glyphosate and NHL prior to 2015—at least that is the unchallenged evidence before the Court. Whatever *Webb*, *Davis*, and *Alvarez* say about the applicability of discovery of harm rules under § 541 when the individual debtor lacks knowledge of causation, they say nothing about the impossibility of being able to establish causation because *no one* knew about a causal link between a debtor's prepetition injury and some unknown chemical. The Court declines to extend *Alvarez*, *Webb*, and *Davis* to the particular facts before it. Nothing in the record before the Court establishes that the Burrises or a trustee could have brought a successful claim under Georgia law in 2009, and the US Trustee failed to establish that a cause of action had accrued under Georgia law at the time of the bankruptcy case. Nothing in *Alvarez* or federal law requires a different result.[6]

---

[5] In *Davis*, the FDA issued warnings about the device at issue not only prior to the bankruptcy case, but prior to the debtor having the device implanted. In *Webb*, the medication at issue was not disclosed to the court, and there is no discussion about when a link between the medication and the debtor's condition was established by the medical or scientific community or that the court contemplated such a factual scenario.

[6] Other courts have relied on a similar distinction to find a debtor's cause of action was not "sufficiently rooted" in the debtor's pre-bankruptcy past to constitute property of the estate. *See Mendelsohn v. Ross*, 251 F.Supp.3d 518 (E.D.N.Y. 2018) (finding claims related to medical device implanted pre-petition were not property of the estate because the FDA did not first issue warnings about the device until after the debtor's bankruptcy). If the "sufficiently rooted" test adopted by the Supreme Court in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)

C. <u>The Fresh Start</u>

At the hearing, the US Trustee acknowledged the factual distinction between this case and the cases discussed above and suggested a chapter 7 trustee should be appointed to fully investigate and brief whether a cause of action accrued on behalf of the estate in 2009. The Court has carefully considered whether reopening to allow further investigation is appropriate, but the Court finds consideration of the fresh start, the interest of finality, and the length of time that has elapsed weigh heavily against reopening the case at this point.[7] The Burrises filed their bankruptcy case over 12 years ago. The estate closed over a decade ago. The Judge and Trustee originally assigned to the case both retired years ago. Mr. Burris continues to suffer the effects of his cancer and is unable to work. Much of his pain and suffering was no doubt suffered in the years since his bankruptcy filing. While the Court understands the need to define property of the estate broadly and to administer all assets of the estate, the Court is hard-pressed to understand what purpose is truly served by hailing the Burrises back into court all these years after they filed bankruptcy when there is not a hint of bad faith for their failure to disclose claims no one could have known existed. To rule otherwise would subject debtors like the Burrises to a form of endless bankruptcy purgatory, not fully recognizing the fresh start the Bankruptcy Code intended for honest but unfortunate debtors. Whatever prejudice might result to creditors because they will not be paid some portion of the Settlement Funds on claims that are over 13 years old at this point, the Court finds the interest of the fresh start and finality outweigh such prejudice.

---

were still controlling in the Eleventh Circuit (see *Bracewell v. Kelly (In Re Bracewell)*, 454 F.3d 1234 (11th Cir. 2006) (abrogating *Segal*)), the Court would agree with the conclusion in *Mendelsohn* that "[w]ithout the post-bankruptcy events, the prebankruptcy event would be rendered meaningless insofar as plaintiff's ability to obtain settlement proceeds is concerned." *Mendelsohn*, 251 F.Supp.3d. at 525-26.

[7] *See In re Tarkington*, 301 B.R. 502, 506 (Bankr. E.D. Tenn. 2003) ("In exercising its discretion, the court must balance the policy of a fresh start afforded to the debtor against the rights of affected creditors." (*quoting In re Frasier*, 294 B.R. 362, 366 (Bankr. D. Colo. 2003)).

For the foregoing reasons,

IT IS ORDERED that the Motion is **DENIED**.

The Clerk is directed to serve a copy of this order on the United States Trustee, Debtors and their counsel of record, and all parties on the mailing matrix.

END OF DOCUMENT